WILSON, APPELLANT AND CROSS-APPELLEE, *v.* CITY OF
CINCINNATI, APPELLEE AND CROSS-APPELLANT.

[Cite as Wilson v. Cincinnati (1976), 46 Ohio St. 2d 138.]

(No. 75-622—Decided May 5, 1976.)

"* * *

"* * *

140

*Messrs. Frost & Jacobs* and *Mr. R. O. Klausmeyer,* for appellant and cross-appellee.

*Mr. Thomas A. Luebbers,* city solicitor, and *Mr. Ely M. T. Ryder,* for appellee and cross-appellant.

HERBERT, J. Appellant contends initially that the warranty established by subsection (D) of Ordinance No. 556-1973 is contrary to the common law in this state and, therefore, represents an unconstitutional exercise of the city's police power.

Section 3 of Article XVIII of the Constitution of Ohio, commonly known as the "home rule" amendment, provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In the instant case, enactment of the ordinance was not an exercise of the powers of local self-government. *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 151 N. E. 2d 722; *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297, 164 N. E. 2d 574; *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33, 203 N. E. 2d 354; *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129, 269 N. E. 2d 602.

At the heart of appellant's contention is her assertion that the phrase "general laws" must include the common law of the state. Such an argument was rejected in *Leis* v. *Cleveland Ry. Co.* (1920), 101 Ohio St. 162, 128 N. E. 73, and we are not convinced that a departure from the holding in *Leis* is presently desirable.

Appellant asserts further that the ordinances are invalid because the certificate requirement and warranty do not bear a real and substantial relationship to the general welfare of the public.

The "real and substantial relationship" standard, as

used to test the constitutionality of a municipal police regulation, is stated in *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 119, 205 N. E. 2d 382:

"Police regulations, whether by ordinance or statute, will frequently interfere with the enjoyment and use of property and with the making of contracts. However, this court has consistently held that a police regulation having that effect may be valid unless it clearly appears that such regulation bears no real and substantial relation to the public health, safety, morals or general welfare of the public or is unreasonable or arbitrary."

See *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 146 N. E. 2d 854; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682; *Ghaster Properties, Inc.,* v. *Preston* (1964), 176 Ohio St. 425, 200 N. E. 2d 328; *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 205 N. E. 2d 363.

Moreover, because municipalities are presumed to be familiar with local conditions and the needs of the community, a court will not substitute its judgment for legislative discretion unless there has been a clear and palpable abuse of power. *Porter* v. *Oberlin, supra*; *Allion* v. *Toledo* (1919), 99 Ohio St. 416, 124 N. E. 237.

In the case at bar, Ordinance No. 556-1973 encourages inspection of residential housing prior to sale and, thus, supplements enforcement of the city's housing code. The ordinance bears witness to the city's attempt to preserve the quality of its existing housing stock and, in that respect, possesses a real and substantial relation to the public health, safety, morals or general welfare of the public, and is neither arbitrary nor unreasonable.

Appellant also argues that the warranty established by subsection (D) is vague and indefinite, and violates the due process clause of the Fourteenth Amendment to the Constitution of the United States. From an examination of subsection (D), it is sufficiently clear that an implied warranty of compliance with the city's building and zoning codes is created and that the warranty runs to the prospective buyer. Thus, the provisions are not so vague that

men of common intelligence must necessarily guess at their meaning and differ as to their application. *Columbus* v. *Rogers* (1975), 41 Ohio St. 2d 161, 324 N. E. 2d 563; *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26, 266 N. E. 2d 571.

In reply to the cross-appeal, appellant urges that the necessity of a warrantless inspection by appointment prior to issuance of a certificate of inspection, and the attendant criminal penalty imposed by subsection (F), are contrary to the Fourth Amendment to the United States Constitution.[1]

From an examination of Ordinance No. 556-1973, it can be seen that the homeowner, prior to entering into a contract for the sale of the property, is required to tender to the prospective buyer a Certificate of Housing Inspection. The failure to so comply, with three exceptions, renders the seller subject to the criminal penalty provided in subsection (F) and Ordinance No. 557-1973. A critical aspect of the legislation, however, is that the seller can obtain the certificate only by agreeing to a time when an inspector is permitted access to the property.

Obviously, the seller is faced with a serious dilemma; either he must consent to a warrantless search or face the possibility of a criminal penalty.

Generally, a search to which an individual consents meets Fourth Amendment requirements. *Katz* v. *United States* (1967), 389 U. S. 347, 358. Thus, it may be represented that because the seller arranges for the inspection, including a proper time, he consents to the search. However, a valid consent involves a waiver of constitutional

---

[1]As applicable herein, the Fourth Amendment provides that:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause * * *."

These rights are enforceable against the states through the Fourteenth Amendment. *Ker* v. *California* (1963), 374 U. S. 23; *Camara* v. *Municipal Court* (1967), 387 U. S. 523.

rights and cannot be lightly inferred; hence, it must be "voluntary and uncoerced, either physically or psychologically." *United States* v. *Fike* (C. A. 5, 1972), 449 F. 2d 191, 193; *Phelper* v. *Decker* (C. A. 5, 1968), 401 F. 2d 232; *Cipres* v. *United States* (C. A. 9, 1965), 343 F. 2d 95.

In the case before us, the coercion represented by the sole alternative of possible criminal prosecution clearly negates any "consent" which may be inferred from the allowance of the inspection and, therefore, the validity of such searches upon the basis of consent is not sustainable.

A finding that the provisions of subsection (F) and Ordinance No. 557-1973 cannot be constitutionally enforced is further warranted in light of the decision of the United States Supreme Court in *Camara* v. *Municipal Court* (1967), 387 U. S. 523. There, after a lessee refused to permit a warrantless inspection of his residence, he was arrested and charged with violation of a provision of the San Francisco Housing Code.[2]

In reaching its determination that the Fourth Amendment bars prosecution of a person who refuses to permit a warrantless, code-enforcement inspection of his personal residence,[3] the court in *Camara*, at page 529, noted with approval its language in *Johnson* v. *United States* (1948), 333 U. S. 10, 14:

---

[2]The ordinance stated:

"Authorized employees of the city departments or city agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the city to perform any duty imposed upon them by the Municipal Code."

[3]In a companion case, the court also determined that the Fourth Amendment requires use of the warrant procedure to effect unconsented inspection of private commercial premises. *See* v. *Seattle* (1967), 387 U. S. 541. See, also, *Currier* v. *Pasadena* (1975), 48 Cal. App. 2d 810, 121 Cal. Reptr. 913, in which an ordinance requiring issuance of a certificate of occupancy before a vacated premises could be reoccupied operated to restrain a property owner from selling it unless he consented to a warrantless search, and could not be constitutionally enforced without resort to statutory procedures for the issuance of warrants.

" 'The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman, or government enforcement agent.' "

Additionally, the *Camara* decision rejected arguments similar to those advanced by the city herein, *i. e.*, that these types of warrantless administrative searches can be justified on the grounds that they make minimal demands on occupants, that warrants in such cases are unfeasible, or that area inspection programs could not function under reasonable search warrant requirements.

As applicable to the instant facts, the import of *Camara* is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty. Therefore, where a municipal ordinance requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's failure to tender the certificate violates the owner's rights under the Fourth Amendment to the United States Constitution.

The final issue raised in this appeal concerns the validity of the presumption in subsection (D).[4] There, the buyer is presumed not to have knowledge of any deficiencies in the structure unless (1) he signs a written statement specifically noting each deficiency, or (2) he derives a substantial part of his income from real estate operations or actively engages in that business.

For a statutory presumption to be sustained, there must be a natural and logical connection, in light of com-

---

[4] The city does not contest the Court of Appeals' finding that the two year limitation of action in subsection (D) is invalid.

mon experience, between the fact proved and the ultimate fact presumed.[6] *Tot* v. *United States* (1943), 319 U. S. 463; *McFarland* v. *American Sugar Refining Co.* (1916), 241 U. S. 79; *Wilkins* v. *American Export Isbrandtsen Lines, Inc.* (C. A. 2, 1971), 446 F. 2d 480; *State* v. *Dempsey* (1970), 22 Ohio St. 2d 219, 259 N. E. 2d 745.

In the instant case, subsection (D) provides that the sell r does not warrant that the structure is in substantial compliance with the building code where the buyer has actual knowledge of the deficiencies in the structure. However, the ordinance also would presume no actual knowledge of the buyer where he fails to sign the prescribed written statement. This is a result which would not naturally follow and which ignores common methods by which a buyer may obtain such information; for example, through his actual observations or oral communications with the seller. Additionally, as noted by the Court of Appeals, to presume a buyer has actual knowledge of deficiencies solely because he engages in the real estate business does not take into consideration those defects which are discernible only from actual physical inspection. We agree with the Court of Appeals that the presumption, and exceptions thereto, must be declared to be arbitrary and invalid.

In view of all of the foregoing, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.

W. BROWN, J., concurs in the syllabus and judgment.

---

[6] Although this criterion is often used to determine the validity of statutory presumptions in criminal cases, it is also employed in testing presumptions which arise in civil actions. See *Wilkins* v. *American Export Isbrandtsen Lines, Inc.* (C. A. 2, 1971), 446 F. 2d 480; *Cancel* v. *Wyman* (S. D. N. Y., 1970), 321 F. Supp. 528; *Ducharme* v. *Putman* (1971), 161 Conn. 135, 285 A. 2d 318; *Meares* v. *Meares* (1952), 256 Ala. 596, 56 So. 2d 661.

CELEBREZZE, J., concurring. Although I concur, I take this occasion to express my views upon the imposition of criminal penalties for the failure of a homeowner to permit an administrative inspection of his premises.

Justice Herbert accurately concludes that imposition of such criminal penalties upon an individual who does not consent to a warrantless inspection of her premises by a governmental officer, pursuant to a city ordinance enacted to ensure the safety of its housing stock, violates the Fourth Amendment to the Constitution of the United States.

Insertion of a clause within the ordinance at issue herein requiring the officials charged with conducting the housing inspections pursuant to the aforesaid ordinance to obtain a search warrant whenever a homeowner refuses to permit a warrantless inspection of his premises, after advising such person that he or she had a constitutional right to refuse entry of the officials without a warrant, would save the constitutionality of the criminal penalties provided in the ordinance for the refusal of a homeowner to permit inspection of his premises.

The opinion of the Supreme Court of the United States in *Camara* v. *Municipal Court* (1967), 387 U. S. 523, buttresses the above conclusion.

In *Camara*, at page 534, the court held:

"In summary, we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment; that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in *Frank* v. *Maryland* and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections. Because of the nature of the municipal programs under consideration, however, these conclusions must be the beginning, not the end, of our inquiry. * * *"

The *Camara* court, upon examination of the competing

governmental and individual interests involved whenever administrative searches occur, concluded:

"* * * But we think that a number of persuasive factors combine to support the reasonableness of area code-enforcement inspections. First, such programs have a long history of judicial and public acceptance. See *Frank* v. *Maryland*, 359 U. S., at 367-371, 3 L. Ed. 2d at 882-884. Second, the public interest demands that all dangerous conditions be prevented or abated, yet it is doubtful that any other canvassing technique would achieve acceptable results. Many such conditions—faulty wiring is an obvious example—are not observable from outside the building and indeed may not be apparent to the inexpert occupant himself. Finally, because the inspections are neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy. * * *

"* * *

"Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (*e. g.*, a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling. * * *'' 387 U. S. at 537-538.

The *Camara* court capsulized the problem presented by the instant ordinance when it stated, at page 539:

"* * * in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment's

requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect."

Since the insertion of such a "warrant" clause into the ordinance at issue herein is a legislative judgment, it would be improper for this court to do so under the particular facts of this case. I write separately in this case only to clearly indicate my views upon the holding of the Supreme Court of the United States in *Camara* v. *Municipal Court, supra*, as it applies to the instant appeal.

For the foregoing reasons, I concur.