**HOMETOWN CO–OPERATIVE APART-MENTS, an Illinois Not-For-Profit Corporation, Plaintiff,**

v.

**CITY OF HOMETOWN, a Municipal Corporation, Defendant.**

**No. 79 C 2101.**

United States District Court, N. D. Illinois, E. D.

May 19, 1980.

---

Craig Busey, Donald O. Walsh, Barbara J. Smith, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Louis F. Cainkar, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The owner of a group of co-operative apartments has brought a claim under section 1983 of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, and under the fourth, fifth, and fifteenth amendments to the constitution challenging the constitutionality of a municipal building code ordinance. The plaintiff seeks injunctive relief against the enforcement of the ordinance and a declaratory judgment holding the ordinance to be unconstitutional and invalid.

On March 27, 1979, the City of Hometown passed into law Ordinance No. 6–1979.[1] The ordinance makes it unlawful for the owner of residential property to sell or lease the property without providing the buyer or lessee of the Property Certificate of Housing Inspection issued by the city building department within the three-month period before the parties sign the contract for sale or lease.[2] In order to obtain a Certificate of Housing Inspection, the owner of the property must apply for a Certificate, agree in writing to a time during the regular working hours of the building department when the residence can be inspected, and pay a fee.[3] Pursuant to the ordinance the building department inspects the residence for compliance with the Hometown building, housing, property maintenance, and zoning codes.[4] Although the ordinance does not prohibit the sale or lease of the property,[5] it does make it unlawful for a person who is the new owner or lessee of the

---

1. *See* Exhibit 1 Plaintiff's complaint.

2. Hometown, Illinois Ordinance 16–1977, as amended § 21.127(a).

3. Hometown, Illinois Ordinance 16–1977, as amended § 21.127(b).

4. *Id.*

5. Hometown, Illinois Ordinance 16–1977, as amended § 21.127(e).

residence to occupy the property until a certificate is issued.[6] Failure to comply with the ordinance results in a fine for each offense.[7] The City also may file suit and proceed to demolish, repair, enclose, recover costs, or sue for an injunction to force compliance with the inspection procedure.[8] Although the ordinance does not provide for a warrant procedure, it does state that no evidence obtained in the housing inspection shall be used in any subsequent criminal or ordinance violation proceeding brought against the property owner.[9]

Plaintiff Hometown Co-Operative Apartments, a not-for-profit corporation organized and incorporated under the laws of the State of Illinois, is the legal owner of a group of co-operative apartments located in the City of Hometown. The Co-Operative has approximately 382 members and is involved in approximately forty to fifty transfers of property during a calendar year. Plaintiff's claim states that the enforcement of the inspection and other ordinance provisions effectively will infringe upon the rights of the co-operative and its members to enter freely into contracts under the fifth amendment and to be free from unreasonable searches and seizures under the fourth and fourteenth amendments. Plaintiff further contends that the co-operative and its members either must submit their private property to a warrantless search, refrain from selling or leasing their property, or face the threat of criminal penalty. Plaintiff has moved for summary judgment on the fourth amendment

claim and defendant has moved to dismiss [10] on the grounds that plaintiff lacks standing as the proper party to raise these fourth amendment claims and to bring a claim for relief under 42 U.S.C. § 1983.[11]

*Standing*

As a not-for-profit corporate cooperative, plaintiff is the legal owner of the residential housing units that are the objects of the ordinance in this case. Under the corporate scheme, tenants apply for membership in the co-operative, pay a fee (rather than buy stock) and receive a lease which gives them the right to live in an apartment. This lease gives the tenants attributes of ownership but it is the co-operative that holds the legal title to the property. Upon termination of the tenancy, the tenant sells his or her membership back to the co-operative and a new membership is issued to the next tenant. Buying and selling or leasing is accomplished through the co-operative rather than through the individual tenants.

As the property owner, the co-operative enjoys the benefits of fourth amendment protections against intrusive acts on the part of the state or a municipality,[12] since it is well settled that the fourth amendment applies to corporations. *Silverthorne Dunker v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The City of Hometown concedes this much in its brief, but argues that the co-operative cannot challenge the inspection procedure because it has no "expectation of privacy"

---

**6.** Hometown, Illinois Ordinance 16–1977, as amended § 21.127(c).

**7.** Hometown, Illinois Ordinance 16–1977, as amended § 21.130(a).

**8.** *Id.* (b).

**9.** Hometown, Illinois Ordinance 16–1977, as amended § 27.127(d).

**10.** The Court will also treat this motion as a motion for summary judgment in light of the affidavit submitted by the City Building Commissioner. Rule 12(b) Fed.R.Civ.P., *Marvin Coyne v. MSL Industries, Inc.*, No. 75 C 523 (N.D.Ill., February 17, 1976).

**11.** Defendant's motion to dismiss also challenged plaintiff's ability to sue the City of Hometown under 42 U.S.C. § 1983. In light of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), defendant withdrew that part of its motion to dismiss.

**12.** The Fourth Amendment states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

in any of the residential units. The City's reliance on third party standing in suppression of evidence cases to support this theory is misplaced.

■ The municipal ordinance is directed at two parties: owners of property who are sellers/lessors, and buyers/lessees of that property. The cooperative is the proper party to represent its own interests as well as the interests of the buyers or lessees of its residential units. The co-operative, as the owner of the property, is duty bound by the ordinance to comply with its provisions. It is the co-operative which must pay the fine for failure to comply with the ordinance. Moreover, it is the co-operative's ownership rights that are being harmed if the ordinance is unduly burdensome.

Similarly, prospective tenants also have standing to challenge an ordinance which makes it unlawful for a person who is a new owner or lessee to occupy the residence without having received a Certificate of Housing Inspection. However, the co-operative is the proper party to represent their interests. The very nature of the corporate relationship between the plaintiff and its tenants gives the co-operative standing to represent their interests. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).[13]

### Constitutionality

The second issue before the Court involves the conflict between a municipality's power to enforce its municipal codes by requiring an administrative inspection of private property at the point of sale and the privacy interests of the property owner or occupant.[14] The thrust of plaintiff's argument in support of its motion for summary judgment is that the ordinance is unconstitutional because it authorizes warrantless inspections before sale in violation of the Fourth Amendment to the United States Constitution. A review of the Supreme Court cases dealing with administrative inspections is appropriate. These cases provide that under the fourth amendment warrantless searches presumptively are unreasonable.[15] Beginning with *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Court held that a warrantless search of residential property by a municipal inspector violated the fourth amendment.[16] In *Camara*, an apartment dweller was charged with a misdemeanor for violating a San Francisco building ordinance that allowed inspectors to enter a building and check for possible building code violations without a warrant by refusing to consent to an inspection. The ordinance in questions did not require a warrant. In holding the ordinance unconstitutional, the Court rejected the arguments that the ordinance provided enough

---

**13.** The co-operative as a corporation also has the right to bring suit in its own right under section 1983 of the Civil Rights Act of 1871, *Adams v. City of Park Ridge*, 293 F.2d 585 (7th Cir. 1961); *Pennsylvania Bank and Trust Company v. Andrew Hanisck*, 426 F.Supp. 410 (W.D.Penn.1977), and to represent the rights of its tenants, *Elk Grove Firefighters Local No. 2340 v. Willis*, 391 F.Supp. 487 (D.C., 1975); *Robinson v. Conlisk*, 385 F.Supp. 529 (D.C., 1974).

**14.** Barber, *Inspecting the Castle: The Constitutionality of Municipal Housing Code Enforcement at Point of Sale*, 10 Loy.Chic.L.J. 1 (1978).

**15.** Exceptions to the warrant requirement exist only in "certain carefully defined classes of cases." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967). An exception has been recognized for "pervasively regulated business[es]." *United*

States v. Biswell, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972) (allowing a warrantless search of a fire arms retailer), and for "closely regulated" industries "long subject to close supervision and inspection." *Colonade Catering Corp. v. United States*, 397 U.S. 72, 74, 77, 90 S.Ct. 774, 775, 777, 25 L.Ed.2d 60 (1970) (allowing a warrantless search of a liquor store).

**16.** *Camara* overruled *Frank v. Maryland*, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959) and *Eaton v. Price*, 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960). In *Frank v. Maryland*, the Court affirmed state court convictions of homeowners who refused to permit a municipal health inspector enter and inspect his premises without a search warrant. In light of *Camara*, the Court is unwilling to carve out another exception to the warrant requirement.

protections for occupants without a warrant and that the warrant process could not function effectively in the area of municipal inspections. The Court said:

Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the full limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. . . . We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty. (387 U.S. at 532, 533, 87 S.Ct. at 1732–33).

This rationale was applied to commercial premises in *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), where the Court held that a non-consensual administrative inspection upon a commercial premises not open to the public must be made pursuant to a warrant. Also in *Marshall v. Barlows, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court held the Occupational Safety and Health Act of 1970 (OSHA) unconstitutional insofar as allowed inspections of business premises without a warrant. The principles set forth in the *Camara* line of cases are controlling in the area of administrative inspections. *See also Wilson v. Health and Hospital Corporation of Marion County*, 620 F.2d 120 (7th Cir., 1980).

These principles have been applied to point of sale inspection ordinances in other municipalities. *E. g. Wilson v. City of Cincinnati*, 46 Ohio St.2d 138, 346 N.E.2d 666 (1976); *Currier v. City of Pasadena*, 48 Cal. App.3d 810, 121 Cal.Rptr. 913, *cert. denied*, 423 U.S. 1000, 96 S.Ct. 432, 46 L.Ed.2d 375 (1978). In these cases, each ordinance required a property seller to tender to a prospective buyer a Certificate of Housing Inspection before the property could be sold. Failure to consent to a pre-sale inspection by the municipal housing authorities resulted in criminal penalties. Neither of the statutes provided for a warrant procedure.[17]

The City of Hometown argues that its point of sale ordinance is not inconsistent with the standards set forth in *Camara* even without a warrant provision and, therefore, does not violate the fourth amendment. The City admits through an affidavit of the City Building Commissioner that if a property occupant refused to allow an inspection the City would get a warrant. A review of the provisions of the Hometown ordinance does show it provides more privacy protections than the ordinance in the *Camara* case. The statute is directed at a limited class of residential property owners. There are no at random area inspections since inspection occurs only when the property is being sold or leased. In this regard, the property owner triggers the inspection at his or her convenience by making an appointment with the building de-

---

**17.** In *Currier v. City of Pasadena, supra*, the Court said:

To compel a property owner to let his property be vacant and to prohibit him from selling it, unless he "consents" to a warrantless search is to require an involuntary consent. The owner's basic right to use and enjoy the fruits of his property cannot be conditioned on his waiving his constitutional rights under the Fourth Amendment . . . (48 Cal. App.3d at 815, 121 Cal.Rptr. at 916.)

The California court applying the principles set forth in *Camara* held that the ordinance would have been unconstitutional under the Fourth Amendment but for the fact that it was subject to the provisions of the code of civil procedure in that state requiring a warrant for inspections absent voluntary consent.

In *Wilson v. City of Cincinnati, supra*, the Ohio court held that requiring a property seller to agree to a warrantless inspection of her property or face a criminal penalty violated the Fourth Amendment.

partment. The ordinance directs the inspectors to check the property for compliance with the building, housing, maintenance, and zoning codes of the city. The ordinance, in fact, protects the property owner by including a section that states that no evidence found during an inspection can be used against the property owner in the prosecution of any criminal or ordinance violation. Finally, property owners are not subject to a criminal penalty for failure to comply with the ordinance, a deficiency that appeared in the ordinances involved in *Camara, Currier v. City of Pasadena,* and *Wilson v. City of Cincinnati.*[18]

 Notwithstanding these privacy protections contained in the Hometown ordinance, under the principles of *Camara,* the ordinance is unconstitutional insofar as it fails to provide for a warrant procedure. The Court is mindful of the public policy considerations underlying municipal code enforcement ordinances. Municipalities have the duty and policy power to provide for the public health and safety. An ordinance that requires residential property inspections before sale is not an arbitrary or unreasonable method of promoting this interest. Moreover, inspections at the point of sale promote the general trend toward buyer protection in the sale of residential housing.

Formulating a warrant procedure that follows the standard set forth in *Camara* for administrative inspections will not thwart public policy. As *Camara* indicates, issuance of these warrants need not be based on the probable cause standard required for warrants in criminal proceedings. However, conducting an inspection pursuant to a warrant issued in light of reasonable legislative or administrative standards will protect the privacy interests of the residential property owner.

In summary, the Court finds plaintiff has standing to challenge the constitutionality of the Hometown ordinance under § 1983. The Court finds further that the ordinance

is unconstitutional under the fourth amendment insofar as it fails to provide for a warrant as a prerequisite for the point of sale inspection. Summary judgment for plaintiff is granted. It is so ordered.

---

18. Yet, the threat of a fine rather than a threat of a criminal penalty does not make compliance with the ordinance any more voluntary.