The STATE of Ohio, Appellant,

v.

TAYLOR, Appellee.

[Cite as *State v. Taylor* (1991), 77 Ohio App.3d 223.]

Court of Appeals of Ohio,
Clermont County.

No. CA91–02–015.

Decided Sept. 16, 1991.

*Donald White,* Clermont County Prosecuting Attorney, and *David H. Hoffmann,* for appellant.

*Andrew B. Dennison,* for appellee.

KOEHLER, Judge.

Plaintiff-appellant, the state of Ohio, appeals a decision of the Clermont County Municipal Court granting a motion by defendant-appellee, Frank Taylor, Sr., to suppress evidence.

On November 16, 1990, appellee was arrested for using weapons while intoxicated in violation of R.C. 2923.15(A) and was subsequently charged with that offense by complaint. On January 24, 1991, appellee filed a motion to suppress evidence, specifically a firearm obtained by the arresting officer from appellee's residence.

A hearing on the motion was held on February 20, 1991. The arresting officer, Deputy Gary Payne of the Clermont County Sheriff's Office, was the only witness. He testified that on the evening of November 16, 1990, he arrived at appellee's residence in response to a complaint about gunshots heard from the property. Payne saw appellee standing in his front yard talking to another police officer and a park ranger. Upon questioning, appellee told Payne that he had fired a gun in the air to scare off a trespasser. Appellee also told Payne that he had consumed three to four beers that evening.

Payne told appellee that he wanted to recover the rifle for safekeeping. Appellee led Payne into the residence and directed him to where the gun was located. Payne stated that at the time he seized the weapon, appellee was not under arrest and he did not intend to arrest him. Payne decided to arrest appellee after speaking further with him outside the residence. Payne stated that he believed that appellee would fire other firearms located inside the residence, based upon appellee's statements and demeanor and the other officers' past contact with appellee.

Payne further testified that during his conversations with appellee, he observed that appellee's speech was slurred, that his eyes appeared bloodshot, that he leaned against an automobile, and that his breath smelled strongly of alcohol. However, Payne did not administer any field sobriety tests and did not observe appellee having any difficulty walking.

After hearing the evidence, the trial court granted appellee's motion to suppress. The court stated:

"At all times pertinent to a consideration of the issues, the defendant was in the presence of at least two law enforcement officers, and not in the vicinity of any weapons. Under these circumstances for Officer Payne to 'simply ask' that the defendant accompan[y] him into the defendant's home to retrieve the weapon cannot be done without constitutional import. And the defendant's acquiescence cannot be said to have been done voluntarily. The deputy was in uniform. There was no warrant. And the defendant was the focus of the investigation. A warrantless intrusion into a person's home by police is always subject to serious scrutiny. There was no apparent reason why a search warrant could not have been obtained if it was believed necessary to secure the weapon. It is also not clear why having the defendant himself in custody was not sufficient 'safekeeping' to resolve any immediate threat. * * *"

Subsequently, the state filed a notice of appeal and a certificate pursuant to Crim.R. 12(J), stating that the granting of the motion to suppress had rendered the state's proof so weak that any reasonable possibility of effective prosecution had been destroyed.

In its sole assignment of error, the state claims that the trial court erred by granting appellee's motion to suppress. The state argues that the warrantless search is constitutionally valid because it was conducted with appellee's consent. We find this assignment of error is not well taken.

The Fourth Amendment protects a citizen's right to be free from all unreasonable searches. Warrantless searches of residences are considered "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. The United States Supreme Court has consistently held that a police officer cannot constitutionally enter a dwelling to conduct a search without a warrant in the absence of consent or exigent circumstances. *Steagald v. United States* (1981), 451 U.S. 204, 211–212, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38, 45–46. When a warrantless search has been conducted, the state bears the burden to establish that the search falls within one of the exceptions to the warrant requirement. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 575–576; *State v. Kessler* (1978), 53 Ohio St.2d 204, 7 O.O.3d 375, 373 N.E.2d 1252.

When the state attempts to justify a warrantless search on the basis of consent, the state must demonstrate that the consent was freely and

voluntarily given and not the result of coercion, express or implied. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875; *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 143–144, 75 O.O.2d 190, 193–194, 346 N.E.2d 666, 670–671. Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth, supra,* 412 U.S. at 249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. The state's burden to prove consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina* (1968), 391 U.S. 543, 548–549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802.

■ We agree with the trial court that the state did not meet its burden in proving that consent was freely and voluntarily given. This case is factually similar to *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. In that case, police officers learned from an informant that unknown persons were smoking opium in a hotel. Upon arriving at the hotel, the officers were led to a specific room by the odor of burning opium. The officers knocked on the door and a voice inside asked who was there. An officer responded with his rank and name. After a slight delay, defendant answered the door and the officer stated that he wanted to talk. Defendant opened the door, the officers entered and the defendant denied there was an opium smell inside the room. An officer stated, "I want you to consider yourself under arrest because we are going to search the room." The search turned up opium and smoking apparatus. The United States Supreme Court concluded that a warrant should have been obtained before the room was searched. It stated that "[e]ntry into defendant's living quarters, which was the beginning of the search, was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Id.* at 13, 68 S.Ct. at 368, 92 L.Ed. at 440.

Similarly, in *Lakewood v. Smith* (1965), 1 Ohio St.2d 128, 30 O.O.2d 482, 205 N.E.2d 388, the Ohio Supreme Court decided that the results of a warrantless search should have been suppressed. In that case, police officers received an anonymous telephone call advising them that the defendant was "booking" horse race bets at his residence. In reliance upon this information, three detectives went to the defendant's home. They rapped upon the door, and when the defendant answered, they stated that they wanted to come in and ask him some questions. After a short delay, the door was opened and the officers were admitted. A daily racing form and some other gambling paraphernalia were observed by the officers in the interior of the premises. Shortly afterwards, the telephone rang and one of the police officers answered. The person calling tried to place a bet on a horse. The officer then

dared the defendant to empty his pockets. He emptied one but refused to empty the other. At that point, the officer placed the defendant under arrest, stating "you are under arrest on suspicion that the evidence is in that pocket." The officer forcibly examined defendant's other pocket and found betting slips. The defendant was charged with keeping a room in which gambling was permitted and his motion to suppress was overruled by the trial court.

In holding that the motion should have been granted, the Supreme Court first noted that it was undisputed that the officers did not have probable cause for making an arrest at the time of entering the defendant's residence and, therefore, the entrance was justified only if the defendant consented. The court stated:

"This entrance was the beginning of the search and was acquiesced in only because the persons requesting entrance were police officers acting under color of office. The consent to entrance was granted in submission to authority rather than as an understanding and intentional waiver of the defendant's constitutional rights to be free from unreasonable search and seizure." *Id.* at 130, 30 O.O.2d at 483, 205 N.E.2d at 389.

The court went on to state that there were no circumstances sufficient to justify the failure of the officers to investigate further and obtain additional evidence justifying the issuance of a search warrant before invading the defendant's privacy. *Id.* at 131, 30 O.O.2d at 484, 205 N.E.2d at 390.

In the present case, the police officer obtained entry into appellee's home under the color of police authority, based upon the officer's representation that he was taking the weapon for safekeeping. There has been no showing that appellee made a knowing and voluntary waiver of a constitutional right. We conclude that the trial court was correct in granting appellee's motion to suppress. Accordingly, the state's sole assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., concurs.

YOUNG, J., dissents.

WILLIAM W. YOUNG, Judge, dissenting.

I believe that the state has shown that appellee's consent to enter the house and recover the gun was freely and voluntarily given. Even though law enforcement personnel were present, there is nothing to suggest coercion or duress on the part of the officers.

I would reverse and, thus, dissent.