Defendant Amanda Slagter appeals from her conviction for possession of drugs and assigns three errors for our review. For the reasons set forth below, we affirm the conviction but remand for re-sentencing.
On December 15, 1998, defendant was indicted for one count of possession of more than fifty times the bulk amount of psilocybin (psychedelic mushrooms), in violation of R.C. 2925.11 and one count of possession of criminal tools, in violation of R.C. 2923.24. On April 9, 1999, defendant moved to suppress the state's evidence and asserted that it was obtained as the result of an illegal search.
The trial court held a hearing on the motion to suppress on April 19, 1999. The state's evidence demonstrated that at 5:06 p.m., on October 10, 1998, Solon police received a 9-1-1 call for assistance at 6656 Duneden Avenue. The caller indicated that someone had expired at this address.
Solon Police Officer Joseph Veto responded to the call. He observed the body of twenty-five year-old Kevin Wilson in the bathtub. Officer Veto spoke with defendant who indicated that she and the decedent had gone to sleep at 4:00 a.m. and when she awoke at 4:00 p.m., Wilson was unresponsive. She stated that she placed him in the bathtub to revive him and later called the rescue squad. Defendant was unable to provide the officer with an address at which she could be reached and was unable to provide the name of any close relatives in the area.
Officer Veto testified that he ordered defendant to leave so that the premises could be examined by the coroner. Defendant asked to remove her personal property from the home. Officer Veto informed her that the police would have to examine anything that she removed from the home since she did not live there and since the scene was to be preserved for the arrival of the coroner.
Defendant gathered her Rottweiler, her blanket and pillow, a jacket and two knapsacks. Officer Veto asked her to open the knapsacks. He observed clothing in the first knapsack. Defendant then unzipped the second knapsack and looked upward. As she started to close the sack, Officer Veto said, "Wait a minute." He then observed the mushrooms and placed defendant under arrest.
Officer Veto established that the area was being treated as a potential crime scene and he suspected that Wilson may have died from a drug overdose.
The trial court determined that defendant consented to the search and it denied defendant's motion to suppress. The state subsequently presented its case-in-chief.
Solon Paramedic David Latarski established that he responded to the scene and determined that Wilson had expired and had been dead for some hours.
Solon Police Officer Ernest Pochervina testified that he responded to the call shortly after 5:00 p.m., and spoke with defendant. He examined the area generally for any evidence which would be helpful to the coroner. Officer Pochervina informed defendant that the area had to be secured and that nothing could be removed. Defendant implored him for permission to remove some of her property. He informed her that she could only remove some essential items and that the police would have to inventory what-ever was removed.
Defendant gave the police a statement then waited for a friend to pick her up. She then proceeded to remove bedding and backpacks from the bedrooms. Officer Pochervina watched as defendant unzipped the first backpack and observed that it contained money. Defendant started to unzip a second backpack then slowly placed her hand over the opening. Officer Pochervina observed a dried brown vegetable in a plastic bag. Defendant quickly began to close the backpack but Officer Veto came over to examine it. The substance was later determined to be 1600 grams of psychedelic mushrooms. Officer Pochervina stated that the street value of the mushrooms was $85,000.
Officer Pochervina also established that the decedent's room was in extreme disarray and contained drugs and drug paraphernalia.
David Wilson, Kevin's father, testified that he and Kevin's mother were out of town at the time Kevin died. He established that Kevin had a recurring drug problem and died of a drug overdose. He had repeatedly informed Kevin that he would not be permitted to remain at their home if he brought drugs there, and to his knowledge, Kevin did not do so. Mr. Wilson further established that Kevin had a dark green backpack and a burgundy colored backpack. He stated, however, that he had never seen the backpack in which the mushrooms were found.
Defendant elected to present evidence. Defendant proffered the testimony of James Fambro who would have testified regarding Wilson's ownership of the drugs, use of the cellular telephones, the typical condition of the decedent's bedroom, and the relationship between the defendant and Wilson. The state moved to preclude this evidence as irrelevant and the trial court granted the motion.
Defendant testified that she came to Cleveland from New York approximately one year earlier. Her father had given her approximately $3,000 when she left New York and she therefore was not in need of money. She admitted that she used marijuana and prescription drugs and that she and the decedent used drugs together.
The evening before Kevin died, defendant stayed at a friend's house in Lakewood. Kevin invited her to stay at his parents' house and they packed up defendant's things in six backpacks, some of which belonged to Kevin. They then went to the Flats and met some of Kevin's friends, went to Kinko's to get something for Kevin's parents' bookstore, then went to a bar in Solon. Defendant stated that Kevin took a couple of pills at this time and she consumed a number of Valium.
The couple next went to Kevin's parents' house where they searched the newspaper ads for an apartment, then went into the hot tub. They went to sleep at approximately 4:00 a.m. Defendant stated that she awoke after 4:00 p.m. and assumed that Kevin was still sleeping. She let her dog out then came back upstairs to wake Kevin. She shouted at him and shook him then dragged him to the shower to revive him before calling 9-1-1.
Defendant further testified that Officer Veto had her prepare a written statement. Defendant asked to leave and the officers told her that they would need to look at whatever she removed from the home. She stated that there were a number of backpacks in the spare bedroom of the house and she inadvertently grabbed a bag which did not belong to her. Defendant stated that she opened the bag for the police and was quite shocked to discover that it contained mushrooms. She explained to Officer Veto that it did not belong to her but she was quickly arrested and transported from the house.
On rebuttal, the state presented the testimony of deputy coroner Joseph Felo who opined that Kevin died between 6:00 a.m. and 9:00 a.m. on October 10, 1998.
Defendant was subsequently acquitted of the charge of possession of criminal tools but convicted of drug possession and was sentenced to a mandatory term of eight years imprisonment on this charge. Defendant now appeals and assigns three errors for our review.
Defendant's first assignment of error states:
 THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.
Within this assignment of error, defendant asserts that the police lacked probable cause to search her bag. Specifically, she claims that the trial court erred in determining that the police had a legitimate right to inspect items which she was removing from the crime scene, the trial court erred in finding that defendant consented to search of her bag, and that the trial court erred in failing to find that defendant withdrew her consent to the search prior to the time that the mushrooms were found.
The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but on probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
These protections are applicable to the states via theFourteenth Amendment, Mapp v. Ohio (1961), 367 U.S. 643, 650, 81 S.Ct. 1684,6 L.Ed.2d 1081; Ker v. California (1963), 374 U.S. 23, 30, 83 S.Ct. 1623,10 L.Ed.2d 726, and by Section 14, Article I, of the Ohio Constitution which is virtually identical to the Fourth Amendment. See State v.Pierce (1998), 125 Ohio App.3d 592, 596.
Judicial interpretation of the Fourth Amendment has established that a presumption of unreasonableness attaches to all warrantless home entries. Payton v. New York (1980), 445 U.S. 573, 583, 100 S.Ct. 1371,63 L.Ed.2d 639; Welsh v. Wisconsin (1984), 466 U.S. 740, 749,104 S.Ct. 2091, 80 L.Ed.2d 732. To overcome this presumption, the burden is placed upon the government to demonstrate that the search falls within a legally recognized exception to the warrant requirement. State v. Kessler
(1978), 53 Ohio St.2d 204, 207.
An exception to the warrant requirement is recognized where exigent circumstances are present. See Coolidge v. New Hampshire (1971),403 U.S. 443, 475-479, 91 S.Ct. 2022, 2042-2044; Welsh v. Wisconsin (1984),466 U.S. 740, 104 S.Ct. 2091, 2097. An exigent circumstance is one that prompts police officers to believe either that a person in the home is in need of immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal or destruction of evidence or contraband. Mincey v. Arizona (1978),437 U.S. 385, 385, 392-393, 98 S.Ct. 2413-2414; Minnesota v. Olson (1990),495 U.S. 91, 101, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85.
There is no general crime scene exception to the warrant requirement, however. Flippo v. West Virginia (1999), ___ U.S. ___, 120 S.Ct. 7, 8. A "warrantless search must be `strictly circumscribed by the exigencies which justify its initiation.'" State v. Applegate (1994),68 Ohio St.3d 348, 350 quoting Terry v. Ohio
(1968), 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889,908-909.
We additionally note that a warrantless search may be justified by the consent of the subject. State v. Sneed (1992), 63 Ohio St.3d 3, 7.
 To justify a warrantless search on the basis of consent: [t]he state must demonstrate that the consent was freely and voluntarily given and not the result of coercion, express or implied. * * * Voluntariness is a question of fact to be determined from the totality of the circumstances. * * * The state's burden to prove consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority."
State v. Taylor (1991), 77 Ohio App.3d 223, 225-26. Consent given after the use of coercion, duress, or trickery is not free and voluntary. Statev. Ingram (1992), 82 Ohio App.3d 341, 346.
Moreover, a citizen may limit the scope of a consent search, and may revoke or countermand his consent during a search. See Florida v. Jimeno
(1991), 500 U.S. 248, 252, 111 S.Ct. 1801, 114 L.Ed.2d 297; State v. Rojas (1993), 92 Ohio App.3d 336, 339.
Applying all of the foregoing, we are unable to conclude that the trial court erred in denying defendant's motion to suppress. It is clear to us that this search cannot be justified as a consensual search of the backpack since the police forced defendant to consent in order to remove it from the home.[1] Nonetheless, we conclude that this situation presented exigent circumstances since defendant sought to remove bags of items from the home where a suspected drug overdose had just occurred. Under these circumstances, the police officers reasonably believed that the examination of the backpacks was necessary to stop the imminent loss, removal or destruction of evidence. Not only were exigent circumstances present, they were created by the defendant herself. In light of these exigent circumstances, the warrantless search of the items which defendant sought to remove from the house was clearly permissible and was not conducted in violation of defendant's Fourth Amendment rights.
Defendant's first assignment of error is without merit.
Defendant's second assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE WHICH EXCLUDED ALL TESTIMONY OF THE DECEASED'S BEST FRIEND WHO WOULD HAVE PROVIDED RELEVANT AND CRITICAL TESTIMONY.
Defendant next asserts that the trial court erred in refusing to permit James Fambro from testifying. According to defendant, Fambro would have established that the decedent was the owner of the psychedelic mushrooms and would have established the identity of the person using one of the decedent's cellular phones on the day the decedent died.
Evid.R. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 402 provides that evidence which is not relevant is not admissible. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court.Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271; State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. The trial court's decision will not be disturbed absent a materially prejudicial abuse of discretion. Id. If relevant, the evidence still must be evaluated under Evid.R. 403 to determine whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion or the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Krischbaum v. Dillon
(1991), 58 Ohio St.3d 58, 66.
As to the proffered testimony concerning whether the decedent told Fambro that he had obtained the mushrooms, we note that in this instance, defendant was charged with possession of drugs after Wilson's death. The key issue was possession, not ownership. See R.C. 2925.01(K) which provides as follows:
 "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to a thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
As set forth in State v. Mann (1993), 93 Ohio App.3d 301, 308:
 Ownership of the contraband need not be established. A person may indeed control or possess property belonging to another.
Similarly, 4 Ohio Jury Instructions (1981), 59, Section 409.50 states:
 5. OWNERSHIP. Ownership is not necessary. A person may possess or control property belonging to another.
From the foregoing, ownership is simply not the relevant question when possession is at issue and we therefore are unable to conclude that the trial court abused its discretion in refusing to permit admission of evidence of ownership while Kevin was still alive.
As to the proffered testimony regarding the cellular phones, we note that ownership and use of the phones was not relevant to any of the charges. Further, the evidence now offered by defendant concerning whether the second cellular telephone was used at Wilson's home or from another location was not part of the original trial record and therefore may not be considered now upon appeal. We find no abuse of discretion in connection with the court's ruling as to this matter.
Finally, as to the proffered testimony regarding whether defendant could have mistaken one of Wilson's backpacks for one of her own and regarding defendant's relationship with Wilson, we note that defendant testified to both of these matters. This testimony would have been merely cumulative of what the defense presented. The trial court did not abuse its discretion in precluding this proffered testimony.
This assignment of error is without merit.
Defendant's third assignment of error states:
 DEFENDANT'S ATTORNEY FAILED TO MAKE A FORMAL DISCOVERY REQUEST AND WAS WHOLLY UNPREPARED FOR EVERY ASPECT OF HIS REPRESENTATION.
Defendant next asserts that she was denied effective assistance of trial counsel. Specifically, defendant presents affidavits, dehors the record, in which the affiants aver that her trial attorney was generally unprepared. Defendant also complains that her trial attorney failed to obtain the cellular phone records which would have established that one of the phones owned by the decedent was not at his home at the time of his death.
In establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687. Accord State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. TheStrickland court also cautioned courts examining the issue that:
 [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134(1982). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
Id., at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247, 253; Debatable trial tactics do not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49.
With regard to the evidence dehors the record, we cannot find trial counsel ineffective from these documents; the appropriate vehicle for their consideration is a motion for relief from judgment pursuant to R.C. Chapter 2953.
With regard to the evidence concerning the phone calls made from the cellular phones, the state's evidence demonstrated that calls were made from both phones during the hours before the police were summoned and that defendant had one of the phones in her possession while the police spoke with her. (Tr. 96). It is therefore clear that defendant's trial counsel avoided reference to the phone records in order to divert attention from the fact that calls were also made on the phone in defendant's possession in the hours before police were called, because this was contrary to defendant's testimony. Moreover, the entire trial strategy was that defendant had recently met the decedent and was unfamiliar with his property, thus making confusion of the backpacks more plausible. It is now completely contrary to that strategy to assert that trial counsel should have presented this detailed information concerning Wilson's property.
This assignment of error is without merit.
In accordance with the foregoing, defendant's conviction is affirmed. Pursuant to Crim.R. 52(B), however, an appellate court may sua sponte consider plain errors. State v. Slagle (1992), 65 Ohio St.3d 597, 604. Further, an error rises to the level of plain error when the error substantially affects the outcome of the sentencing or trial. State v.Long (1995), 102 Ohio App.3d 243. This Court is mindful, however, that notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Landrum(1990), 53 Ohio St.3d 107, 111; State v. Latson
(1999), 133 Ohio App.3d 475, 479-480.
In this matter, although it has not been briefed or argued by the parties, this Court believes that plain error has occurred in connection with the imposition of sentence. In fairness to defendant and in furtherance of justice, that error must be addressed herein. Specifically, we note that the trial court failed to engage in the analysis required pursuant to R.C. 2929.14 before it imposed sentence. The record suggests that defendant was eligible for the presumption that the minimum sentence would apply to her conduct and there are no findings of record to justify the sentence imposed herein. Accordingly, the sentence must be vacated and the matter set for re-sentencing.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, J., CONCURS
 ANNE L. KILBANE, J., CONCURS IN PART AND DISSENTS IN PART (SEE ATTACHED OPINION)
 _________________ ANN DYKE ADMINISTRATIVE JUDGE
[1] Further, as to any claim of revoked consent, it is important to note that only Det. Veto testified at the suppression hearing. The testimony from the subsequent trial cannot be relied upon to demonstrate that the trial judge improperly denied the motion to suppress.
 DISSENTING AND CONCURRING OPINION