# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00081-SCT

*KENNETH M. CROOK a/k/a KENNETH CROOK*
*a/k/a K. MICHAEL CROOK a/k/a KENNETH*
*MICHAEL CROOK a/k/a MIKE CROOK*

*v.*

*CITY OF MADISON, MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2012 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | STEVE C. THORNTON |
| | JOHN HEDGLIN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVE C. THORNTON |
| ATTORNEY FOR APPELLEE: | JOHN HEDGLIN |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | REVERSED AND RENDERED - 07/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    The City of Madison enacted an ordinance requiring landlords to obtain a license for each unit of rental property. The ordinance, known as the Rental Inspection and Property Licensing Act (RIPLA) conditions the grant of a license on the landlord's advance consent to property inspections. Kenneth Michael Crook was convicted in municipal court of two counts of violating RIPLA by maintaining a rental unit without a rental license and sentenced

to pay a fine of $300 on each count. After a bench trial, the County Court of Madison County affirmed his convictions. Crook appealed to the Circuit Court of Madison County, which affirmed. Crook then appealed to this Court. We assigned his appeal to the Court of Appeals, which affirmed.

¶2.     At each level of review, Crook argued that RIPLA's inspection provisions violate the ban on unreasonable searches imposed by the Fourth Amendment of the United States Constitution. The Court of Appeals held that RIPLA is not unconstitutional because it requires the City to obtain a judicial warrant if the landlord or tenant withholds consent to an inspection. We granted Crook's petition for certiorari and now reverse. We hold that RIPLA's inspection provisions are constitutionally defective because, although RIPLA has a warrant provision, that provision allows a warrant to be obtained "by the terms of the Rental License, lease, or rental agreement," which is a standard less than probable cause. Accordingly, we reverse the judgments of the Court of Appeals, the Circuit Court of Madison County, and the County Court of Madison County affirming Crook's convictions. We reverse Crook's convictions and render a judgment of acquittal.

## FACTS

*A. RIPLA*

¶3.     The City adopted RIPLA on July 15, 2008, and amended it on May 18, 2010. RIPLA states that its purpose is to "preserve and promote the public health, safety, and general welfare of the City's residents and of the public generally, and to assure the proper

2

maintenance of the City's residential rental housing stock." RIPLA's preamble further illuminates its purpose:

> WHEREAS, the City of Madison, Mississippi ("City") finds that certain of its residential neighborhoods could experience declining property values, a concomitant loss of City property tax revenue, and a decline in health, safety, and quality of life due to a lack of inspection and preventive and ongoing maintenance for an increasing number of rental properties owned by absentee landlords;
> . . .
>
> WHEREAS, the City has a duty and need to enact regulations that establish safe standards related to preventive and ongoing rental property maintenance, and enable the City to effectively license, inventory, inspect, and, if necessary, repair rental properties, in order to protect the overall health, safety, and welfare of the City's residents . . . .
>
> NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF MADISON, MISSISSIPPI, THAT THIS ORDINANCE SHALL GOVERN THE LICENSING, INSPECTION, MAINTENANCE, AND REPAIR OF RENTAL PROPERTIES WITHIN THE CORPORATE LIMITS OF THE CITY.

¶4. RIPLA makes it a misdemeanor to rent property without both a rental license and a certificate of compliance for each dwelling unit, and each offense is punishable by a fine of $300 per day of noncompliance. A "dwelling unit" is defined as "[a] room or group of rooms occupied or intended to be occupied as a separate living quarters for one (1) Household." The building official is the City official designated to administer and enforce RIPLA.

¶5. To obtain a rental license, the owner must give advance consent to allow the building official to inspect the property to ensure compliance with RIPLA. The owner also must submit a written application, pay annual licensing fees of $100 per dwelling unit and $100 per dwelling as a whole, and post a $10,000 bond, collateral, or letter of credit per dwelling

3

unit. The bond serves as a surety for the costs of performing any correction orders issued by the building official.

¶6.    An owner obtains a certificate of compliance after the building official inspects the property and certifies that it complies with RIPLA's requirements, including city housing codes, technical codes, zoning, subdivision, landscape, and environmental ordinances, state and federal housing laws, and applicable judicial and administrative decrees. The owner's advance consent to inspection allows the building official to make inspections "when and as needed" of all portions of a dwelling unit and common areas, whether occupied or unoccupied. If a violation is noted, the building official issues a notice of the violation with a time set for correcting the violation. If correction is not made by the deadline, the City may authorize the building official "to complete the necessary repairs, alterations, or improvements and charge the expenses incurred therfor [sic] to the Owner." If this occurs, the owner must reimburse the City, or forfeit the bond, collateral, or letter of credit. If the repairs exceed the owner's surety, the City will have a privileged lien on the property to secure its expenses.

¶7.    The building official must give the owner reasonable advance notice of the date and time of each inspection, with the owner to notify the tenants of any occupied dwelling units slated for inspection. RIPLA states that the building official is authorized "to enter, inspect, repair, alter, and improve" all property subject to RIPLA. It further states that, by the terms of the rental license, owners and tenants consent to the building official entering the property at reasonable times for inspection and repair to ensure compliance with RIPLA. It also states:

4

Should a Tenant or Owner refuse entry, the Building Official shall be authorized by virtue of the terms of the Rental License to secure a judicial warrant authorizing entry by the terms of the Rental License, lease, or rental agreement.

*B. Crook's Prosecution*

¶8. At the trial, it was established that Crook owned residential property located at 127 Cypress Drive, within the City of Madison, Mississippi. It was undisputed that Duke Swyers lived at the residence from 2007 through 2009, and Tammy Thompson lived there from March 2010 until September 2010. Crook testified that he had option-to-purchase agreements with Swyers and Thompson under which rental payments would go toward the purchase price. He argued that these agreements removed his property from the dictates of RIPLA. However, both Swyers and Thompson testified that they had been renting and never had planned to purchase the property.

¶9. On August 14, 2008, the City sent notifications letters concerning RIPLA to all owners of rental property in the City. The letter informed the owners of the steps needed to comply with RIPLA. The City sent Crook a copy of the letter based upon City officials' belief that 127 Cypress Drive was rental property. On October 20, 2008, the City sent Crook a letter stating that it had not received his licensing fee and informing him of the consequences of renting property without a rental license. On February 12, 2009, Crook filled out and signed an application for a rental license and paid a $100 licensing fee. The application contained the following statement above Crook's signature: "[a]pplication is hereby made for an inspection to determine if the existing building described is in compliance with codes and ordinances adopted by the City of Madison." But because Crook

5

never posted a bond, collateral, or letter of credit, the City never issued a rental license for 127 Cypress Drive. On March 11, 2009, Angie Gelston, a code-enforcement officer, filed charges against Crook for violating RIPLA. Gelston alleged Crook, despite notice, had continued to rent 127 Cypress Drive without a license. On March 26, 2010, Crook sent the City a letter requesting return of the licensing fee and stating that he personally would be occupying 127 Cypress Drive, thus removing the property from the scope of RIPLA.

¶10. On May 20, 2010, the building official, Bill Foshee, sent Crook a letter alleging Crook was in violation of RIPLA for renting the property without a rental license, and that all utilities would be disconnected if Crook did not comply within fifteen days. On June 1, 2010, Crook responded, stating that RIPLA did not apply to the property because Thompson had an option to purchase it and it was not rental property. Foshee reported the violation to the Madison Police Department. On October 6, 2010, Crook was arrested for having rented 127 Cypress Drive without a rental license in violation of RIPLA.

¶11. On January 13, 2011, the Madison Municipal Court convicted Crook of two counts of violating RIPLA. He appealed to the County Court of Madison County and filed motions to dismiss, alleging that (1) RIPLA is facially unconstitutional and unconstitutional as applied; (2) the arrest warrants were invalid due to lack of probable cause; and (3) RIPLA violates a state statute that bars municipalities from directly or indirectly regulating the amount of rent charged for private residential property. *See* Miss. Code Ann. 21-17-5(2)(h) (Rev. 2007). The county court denied the motions to dismiss, held a trial, and affirmed his convictions. Crook appealed to the circuit court, which affirmed.

6

¶12. Before the Court of Appeals, Crook raised his arguments from the motions to dismiss and also challenged the weight and sufficiency of the evidence by arguing that RIPLA did not apply to his property due to the option contracts. The Court of Appeals affirmed. *Crook v. City of Madison*, 2014 WL 4823656, *11 (Miss. Ct. App. Sept. 30, 2014). The Court of Appeals found that the verdict was not against the overwhelming weight of the evidence. *Id.* at *10. The Court of Appeals found that the City had presented sufficient evidence that Crook had rented the property to Swyers and Thompson and that the purported option contracts had been attempts to disguise these rental relationships. *Id.* at *10. But the Court of Appeals found that Crook's arrest for RIPLA violations was improper. *Id.* at *10. The Court of Appeals held that RIPLA does not violate Mississippi Code Section 21-17-5(2)(h). *Id.* at *9. The Court of Appeals also held that RIPLA does not violate the Fourth Amendment's prohibition on unreasonable searches because RIPLA mandates that the building official obtain a warrant if the owner or tenant does not consent to an inspection. *Id.* at *8.

¶13. This Court granted Crook's petition for certiorari. We limit our review to the Court of Appeals' holding that the warrant provision renders RIPLA constitutional. M.R.A.P. 17(h). Because we find that RIPLA's warrant provision is insufficient to safeguard landlords' and tenants' right of freedom from unreasonable searches, we find RIPLA's inspection provisions to be unconstitutional.

**DISCUSSION**

*A. Standard of Review*

7

¶14.    Crook argues that RIPLA's inspection provisions are facially unconstitutional[1] because they require a landlord to give advance consent to warrantless inspections. This Court applies *de novo* review to the issue of the constitutionality of a statute or ordinance. ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243 (Miss. 2012). We "bear[] in mind (1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts are resolved in favor of a statute's validity." ***Id.***

   *B. Standing*

¶15.    The Court of Appeals held that Crook had standing to challenge the constitutionality of RIPLA's inspection provisions. This Court has observed that "Mississippi's standing requirements are quite liberal. . . . [P]arties have standing to sue 'when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.'" ***Brent v. Mathis***, 154 So. 3d 842, 845 (Miss. 2014) (quoting ***Hall v. City of Ridgeland***, 37 So. 3d 25, 33 (Miss. 2010)). For standing based on adverse effect, the adverse effect suffered by the challenger must be different than the adverse effect suffered by the general public. ***Brent***, 154 So. 3d at 845 (quoting ***Hall***, 37 So. 3d at 33). Here, Crook was prosecuted for renting his property without a rental license; in order to obtain that rental license, he would have had to have given advance consent to an inspection. As the Court of Appeals correctly recognized, Crook

---

[1] Before the Court of Appeals, Crook also argued that RIPLA is unconstitutional as applied to him. Because we find that RIPLA's inspection provisions are facially unconstitutional, we do not address Crook's as-applied challenge, except to note that the challenge is not ripe for review because the City never sought to inspect Crook's property.

singularly experienced an adverse effect from the City's conduct due to his prosecution for renting his property without a rental license, affording him a colorable interest in the subject matter of this litigation. We find that Crook has standing to challenge the constitutionality of RIPLA's inspection provisions.

*C. RIPLA and the Fourth Amendment*

¶16.    Under the Fourth Amendment of the United States Constitution,

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *Maryland v. Pringle*, 540 U.S. 366, 369, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). The Fourth Amendment's purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967).

¶17.    In *Camara*, the United States Supreme Court examined whether administrative inspection provisions violate the Fourth Amendment's prohibition on unreasonable searches. *Id.* at 525, 87 S. Ct. 1727.  The case arose when a tenant was prosecuted for violating the San Francisco Housing Code after he refused to allow a housing inspector to enter his apartment without a warrant. *Id.* at 526, 87 S. Ct. 1727. The housing code gave inspectors the right to enter buildings at reasonable times. *Id.* The Supreme Court held "that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth

9

Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual. . . ." *Id.* at 534, 87 S. Ct. 1727.

¶18. *Camara* emphasized that a warrant for an inspection may be obtained only upon probable cause. "In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Id.* at 534, 87 S. Ct. 1727. But the test of probable cause required for a search in this context is different from what is required to establish probable cause to search in a criminal investigation. *Id.* at 538, 87 S. Ct. 1727. Specifically:

> Where considerations of health and safety are involved, the facts that would justify an inference of "probable cause" to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant. The test of "probable cause" required by the Fourth Amendment can take into account the nature of the search that is being sought.

*Id.* The Supreme Court further stated that:

> it is obvious that "probable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

In the companion case of *See v. City of Seattle*, 387 U.S. 541, 545, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967), the Supreme Court found that consent or a warrant also is required for administrative entry upon commercial premises not open to the public.

¶19.    In subsequent cases, courts have addressed ordinances that forced owners to consent in advance to property inspections. Numerous cases have held these ordinances to be unconstitutional because they did not contain a warrant provision. *See, e.g.*, *Brower v. Village of Bolingbrook*, 735 F. Supp. 768, 777 (N.D. Ill. 1990); *Hometown Co-op. Apartments v. City of Hometown* (*Hometown I*), 495 F. Supp. 55, 60 (N.D. Ill. 1980); *State v. Finnell*, 685 N.E.2d 1267, 1271 (Ohio Ct. App. 1996); *Sokolov v. Village of Freeport*, 420 N.E.2d 55, 58 (N.Y. 1981); *Pashcow v. Town of Babylon*, 410 N.Y.S.2d 192, 193 (N.Y. Sup. Ct. 1976); *Wilson v. Cincinnati*, 346 N.E.2d 666, 671 (1976). For example, in *Wilson v. City of Cincinnati*, an ordinance required a property owner to consent to a warrantless inspection before entering into a purchase and sale agreement. If the seller attempted to sell the property without a certificate of inspection, the seller was subject to criminal penalties. *Wilson*, 346 N.E.2d at 670. The Ohio Supreme Court held that the consent was involuntary and unconstitutional because it was coerced by the threat of criminal penalties. *Id.* The court also held that "[a]s applicable to the instant facts, the import of *Camara* is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty." *Id.* at 671. The court found that the ordinance violated the Fourth Amendment because it forced a property owner to choose

11

between obtaining the required certificate by allowing a warrantless inspection, or incurring criminal penalties upon the failure to tender the certificate. *Id.*

¶20.    In *Sokolov*, the Court of Appeals of New York faced an ordinance, similar to RIPLA, that required a landlord to consent to a warrantless inspection in order to obtain a permit to rent the property. *Sokolov*, 420 N.E.2d at 56. Renting the property without a permit subjected the landlord to a fine of $250 per day. *Id.* The court found that, under these facts, "in substance, a landlord is subject to a fine of $250 per day for failure to consent to a warrantless administrative inspection." *Id.* The Village argued that the ordinance did not punish the failure to consent to an inspection, but it only punished renting a property without a permit. *Id.* at 57. The Court of Appeals of New York rejected this argument, stating that:

> through an indirect method the property owner is being penalized for his failure to consent to a warrantless search. In this instance the property owner's consent is not voluntarily given as it is clearly a product of coercion. A property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property.

*Id.* (citation omitted). The court found that, because the ordinance coerced consent to a warrantless search under threat of criminal penalty, it was unconstitutional under *Camara* and its progeny. *Id.* at 58.

¶21.    In other cases, ordinances requiring advance consent to search have been upheld because the ordinances required the government to obtain a warrant if the owner refused consent, and the ordinances did not exact criminal penalties for lack of consent. *Mann v. Calumet City, Ill.*, 588 F.3d 949, 951 (7th Cir. 2009); *Tobin v. City of Peoria*, 939 F. Supp. 628, 634 (C.D. Ill. 1996); *Hometown Co-op. Apartments v. City of Hometown* (*Hometown*

12

*II*), 515 F. Supp. 502, 504 (N.D. Ill. 1981); *cf. **Dearmore v. City of Garland***, 400 F. Supp. 2d 894 (N.D. Tex. 2005) (although the rental-permit ordinance required the City to obtain a warrant if the owner did not consent to an inspection, it also imposed criminal penalties on the owner for failing to consent and was unconstitutional). In ***Mann v. Calumet City***, 588 F.3d 949, 950 (2009), the Seventh Circuit reviewed an ordinance that forbade the sale of a house without an inspection to determine compliance with the building code. The ordinance had a requirement that the city's inspectors obtain a warrant to conduct the inspection if the owner refused consent. *Id.* at 952. The Seventh Circuit held that the ordinance was constitutional, stating that "'[p]oint of sale' ordinances such as this one are common and have withstood constitutional attack in all cases that we know of in which the ordinance avoided invalidation under the Fourth Amendment by requiring that the city's inspectors obtain a warrant to inspect a house over the owner's objection." *Id.* at 951.

¶22.    In *Hometown I*, the district court found an ordinance unconstitutional under *Camara* because it required the owner to consent to an inspection before the property could be leased or sold; a fine ensued if the owner leased or sold the property without a certificate of inspection. *Hometown I*, 495 F. Supp. at 56, 60. In *Hometown II*, the district court revisited the ordinance after it had been amended to provide a warrant procedure for cases when the owner refused consent to an inspection. *Hometown II*, 515 F. Supp. at 503. The court held that the City of Hometown's amendment "remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to

13

procure a certificate of inspection." *Id.* at 504. Thus, the court found the ordinance constitutional. *Id.*

¶23. In *Tobin*, an ordinance required property owners to obtain a certificate of inspection for compliance with housing, environmental, and building codes before renting a property. *Tobin*, 939 F. Supp. at 630. Renting without the certificate subjected the owner to a criminal penalty. *Id.* Several property owners sued, arguing that the ordinance forced them to consent to warrantless searches to obtain the required certificate of compliance. *Id.* at 631. Like RIPLA, the City of Peoria's ordinance stated that the City would give owners advance notice of inspections. *Id.* at 632. The ordinance also stated that, in the event the owner refused to allow an inspection, the City reserved the right to obtain a warrant. *Id.* The owners argued that the warrant provision was insufficient to satisfy the Fourth Amendment because it did not *require* the City to get a warrant. *Id.* But the court held that "the plain language of the Inspection Ordinance can be read as incorporating a warrant requirement into the inspection procedure, thereby successfully defeating a claim that it is unconstitutional on its face." *Id.* at 633.

¶24. Crook argues that this case is analogous to *Wilson*, *Sokolov*, and the other cases in which the ordinance at issue lacked a warrant provision. While Crook recognizes that RIPLA contains a warrant provision, he argues that it does not apply to RIPLA's advance-consent provision because a landlord must give advance consent to inspections in order to get a rental license. The Court of Appeals agreed with the City that, like the ordinance in *Tobin*, when RIPLA is read in its entirety, RIPLA's warrant provision is sufficient to satisfy the Fourth

14

Amendment. Under this reasoning, the advance consent a landlord gives to get a rental license is illusory because, under the warrant provision, a licensed landlord can always refuse a scheduled inspection and force the City to obtain a warrant. According to the reasoning of the Court of Appeals, RIPLA never makes a landlord consent to a warrantless search.

¶25.    The Court of Appeals' reasoning is flawed because it fails to account for the language of RIPLA's warrant provision, which on its face does not comport with the Fourth Amendment's probable-cause requirement. The warrant provision states: "[s]hould a Tenant or Owner refuse entry, the building official shall be authorized by virtue of the terms of the Rental License to secure a judicial warrant authorizing entry *by the terms of the Rental License, lease, or rental agreement*." The emphasized language allows a judicial officer to issue a warrant "by the terms of the Rental License, lease, or rental agreement," rather then upon probable cause. The portion of RIPLA's warrant provision authorizing a judicial officer to issue a warrant "by the terms of the Rental License" is particularly troublesome. Because each rental license contains the owner's advance consent to inspections, a significant danger exists that a building official could attempt to obtain a warrant by asserting the owner's advance consent. Probable cause, however, must be the standard. *Camara*, 387 U.S. at 534, 87 S. Ct. 1727. Because RIPLA's warrant provision authorizes the issuance of a warrant without probable cause, it is unconstitutional. And because RIPLA lacks a valid warrant provision, its inspection provisions are unconstitutional.

¶26.    The separate opinion would find that RIPLA's inspection provisions are not appropriate for a facial challenge because they do not *prohibit* the City from obtaining a

15

warrant based upon probable cause. We reject that reasoning. ***Camara*** held that administrative searches conducted without a warrant procedure violate the Fourth Amendment. ***Camara***, 387 U.S. at 534, 87. S. Ct. 1727. And a warrant to inspect property must be based upon probable cause. ***Id.*** Thus, for an inspection provision to be constitutional, it must contain a warrant requirement that provides for the issuance of warrants upon probable cause. *See **Dearmore***, 400 F. Supp. 2d at 902 (stating that "***Camara*** . . . holds that an administrative search of a private residence, including a private residence owned by one person and rented by another, must include a warrant procedure"). RIPLA contains a warrant procedure, but that procedure is constitutionally deficient because it expressly allows a warrant to issue without probable cause. Because RIPLA expressly allows inspection warrants to issue without probable cause, it effectively contains no warrant requirement. And an inspection provision with no warrant requirement is facially unconstitutional. ***State v. Finnell***, 685 N.E. 2d 1267, 1272 (Ohio Ct. App. 1996).

¶27.   The separate opinion also would find that the advance-consent provision is facially unconstitutional because it requires a landlord to give advance consent to inspections. Rather than focusing on the absence of a constitutionally valid warrant requirement, the separate opinion simply would find the advance-consent provision unconstitutional because it requires a landlord to give advance consent to searches in order to obtain a rental license. Because we hold that RIPLA's inspection provisions, which include the advance-consent requirement, are facially unconstitutional because they allow a warrant to issue without probable cause, we agree with the separate opinion that the advance-consent requirement is facially invalid.

16

*D. Severability*

¶28.    RIPLA contains a severability clause, which provides that "[e]very section, subsection, or provision of RIPLA is declared separable from every other section, subsection, or provision to the extent that if any section, subsection, or provision of RIPLA shall be held invalid, such holding shall not invalidate any other section, subsection, or provision thereof." This express language reflects the clear intent of the City that RIPLA is severable. Having found RIPLA's inspection provisions to be unconstitutional, we find them to be severable and that the remainder of the ordinance remains in full force and effect. *See **Jones v. City of Ridgeland***, 48 So. 3d 530, 539 (Miss. 2010).

*E. Crook's Conviction*

¶29.    Crook was convicted of renting property without a rental license in violation of RIPLA. To obtain a rental license, RIPLA required Crook to give advance consent to a warrantless search. This he did not do, and he was convicted of renting his property without a license. Because Crook was convicted of renting property without a license, a license that was unconstitutionally conditioned upon advance consent to a warrantless search, Crook's conviction must be reversed.[2]

---

[2] The separate opinion would not reverse Crook's conviction, reasoning that, because Crook never obtained a rental license, he never gave advance consent to an inspection. We reject this reasoning. If Crook had obtained a rental license, he could not have been convicted of renting property without a rental license. RIPLA unconstitutionally forces landlords like Crook to either consent to a warrantless search or forego a rental license. Crook cannot be penalized for failing to obtain a license that required his consent to an unconstitutional, warrantless search. *Wilson v. Cincinnati*, 346 N.E.2d 666, 671 (Ohio 1976) (stating that "the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty.)"

17

**CONCLUSION**

¶30.    We find RIPLA's inspection provisions to be unconstitutional due to the lack of a valid warrant provision. Therefore, we reverse the judgments of the Court of Appeals, the Circuit Court of Madison County, and the County Court of Madison County that affirmed Crook's convictions. We reverse Crook's convictions for renting property without a rental license, and render a judgment of acquittal.

¶31.    **REVERSED AND RENDERED.**

**WALLER, C.J., LAMAR, KITCHENS AND KING, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND PIERCE, J.; WALLER, C. J., JOINS IN PART. DICKINSON, P.J., NOT PARTICIPATING.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶32.    While I agree with the majority that Kenneth Crook has standing to sue, constitutional claims also are subject to questions of mootness and ripeness.  I would hold that the inspection provisions, as a whole, and the judicial warrant standard of the Rental Inspection and Property Licensing Act (hereinafter: "RIPLA"), addressed by today's majority opinion, qualify neither for a facial challenge nor an as-applied challenge.  Rather, I would hold the advance consent provision of RIPLA unconstitutional under a facial challenge, and in doing so, I would affirm the holding of the Court of Appeals in part.  Thus, with respect, I concur in part and dissent in part and result.

¶33.    The ripeness doctrine arises, at least partially, from the "case or controversy" requirement of Article III. ***Tobin v. City of Peoria, Ill.***, 939 F. Supp. 628, 634 (C.D. Ill.

18

1996). "The Supreme Court of the United States has held that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law . . . ." *The Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 27 (quoting *ASARCO Inc., v. Kadish*, 490 U.S. 605, 617 (1989)). However, we have adopted, as binding precedent, the constitutional ripeness doctrine, and when a case is premature, it will be dismissed, unless it falls under a limited exception, grounded in judicial economy and fairness.[3] *State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1325 (Miss. 1995).

¶34. The Supreme Court of the United States has set forth two factors for considering whether a case is ripe for review: (1) whether the issue is fit for judicial review, and (2) whether denial of judicial review would impose substantial hardship on the petitioners. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). When the petitioner presents an issue that is purely legal, it may be fit for review, as further factual development would not be needed. *Id.* Courts also have defined whether a controversy is ripe for review by stating that "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect

---

[3]The Court stated the exception as follows:

> However, under the principles of judicial economy and fairness, in conjunction with the attorney general's failure to respond to James' request to pursue the public writ of quo warranto, and in the interest of the public policy involved with the merits of the issues raised today, we will not dismiss this case for a procedural defect.

*Griffin*, 667 So. 2d at 1325.

its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." ***Tobin v. City of Peoria***, 939 F. Supp. 628, 634 (C.D. Ill. 1996) (quoting ***Peick v. Pension Benefit Guar. Corp***., 724 F.2d 1247, 1261 (7th Cir. 1983)). The ***Tobin*** Court further stated that the concern is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." ***Tobin***, 939 F. Supp. at 634 (internal quotation omitted).

¶35. Important to the case *sub judice* are the differing degrees of difficulty between mounting a valid facial challenge on the one hand, and a valid as-applied challenge on the other.

> A facial challenge to a legislative Act, the Court has other times said, is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. ***United States v. Salerno***, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).
>
> Under our constitutional system, courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. ***Broadrick v. Oklahoma***, 413 U.S. 601, 610-611, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Instead, the judicial Power is limited to deciding particular Cases and Controversies. U.S. Const., Art. III, § 2. Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. ***Broadrick***, 413 U.S., at 610, 93 S. Ct. 2908.

***Shelby Cnty., Ala. v. Holder***, 133 S. Ct. 2612, 2645 (2013) (internal quotation marks omitted). In a viable facial challenge, "no set of circumstances exists under which the [ordinance] would be valid." ***United States v. Salerno***, 481 U.S. 739, 745 (1987). In other words, every future event would occur as anticipated, and further factual development would

20

serve no purpose. Thus, the Court's denial of the claim would not serve the principles of judicial economy or the policy behind the ripeness doctrine.

¶36. The arguments of the parties may be divided into three main issues: (1) whether the warrant standard and inspection provisions are constitutional under ***Camara v. Municipal Court of City & County of San Francisco***, 387 U.S. 523 (1967); (2) whether the advance consent provision is constitutional; and (3) whether the Court of Appeals correctly held Crook's arrest and conviction and the bond requirement to be proper under Mississippi law and supported by the weight of evidence. For each issue, the Court must determine whether the claims, under the instant facts, are ripe for an as-applied challenge or, in the alternative, present a viable facial challenge.

**1) The Warrant Standard and Inspection Provisions**

¶37. Relying on the United States Supreme Court's decision in ***Camara***, the majority argues that the judicial warrant standard is unconstitutional because it "authorizes the issuance of a warrant without probable cause." (Maj. Op. ¶ 25). The ***Camara*** Court defined "probable cause" in the context of administrative searches, writing, "In determining whether a particular inspection is reasonable – and thus in determining whether there is probable cause to issue a warrant for that inspection – the need for the inspection must be weighed in terms of [the ordinance's] reasonable goals of code enforcement." ***Camara***, 387 U.S. at 535. The ***Camara*** Court further explained the reasonableness standard behind administrative searches, stating:

> "[P]robable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are

21

satisfied with respect to a particular dwelling. Such standards, *which will vary with the municipal program being enforced*, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* at 538 (emphasis added). In other words, probable cause is determined on a case-by-case analysis, and the reasonableness of the search depends on the standards used for conducting it.

¶38. RIPLA states that the judicial warrant must be based on the "[r]ental license, lease, or rental agreement." Under the pertinent facts, Crook was not subjected to a warrantless search or a search involving an insufficient warrant standard. Thus, as the majority notes, an as-applied challenge is not ripe for review.

¶39. The majority, on the other hand, concludes that a facial challenge is ripe, stating, "Because RIPLA expressly allows inspection warrants to issue without probable cause, it effectively contains no warrant requirement. And an inspection provision with no warrant requirement is facially unconstitutional." (Maj. Op. ¶ 26). While I do not disagree that an inspection provision with no warrant requirement may be ripe for a facial challenge, I do not think the instant case presents such a situation. RIPLA contains a warrant requirement, and in order for the Court to consider the constitutionality of the warrant requirement, we must determine whether, as discussed above, "*no set of circumstances exists under which the Act would be valid.*" **Holder**, 133 S. Ct. at 2645 (citing **United States v. Salerno**, 481 U.S. 739, 745 (1987)) (emphasis added). In other words, the key to a successful facial challenge is not, as the majority concludes, whether RIPLA *may* be unconstitutionally applied. The key is

22

whether RIPLA, as it is currently written, *could never* be constitutionally applied and valid. Under RIPLA, the search warrant feasibly could be based on the need to ensure the property upholds the housing codes of the city, technical codes of the city, zoning ordinances, or housing laws as stated in Section 6.a. Thus, the warrant *could* be constitutionally applied and valid, and therefore, the warrant requirement is not ripe for a facial challenge.

### 2) The Advance Consent Provision

¶40.    Section 7.b. states: "The Owner, as a condition to the issuance of the Rental License, shall consent and agree to permit and allow the Building Official to make the following inspections of the Premises, Dwelling, Dwelling Units, and Rental Units when and as needed to ensure compliance with the provisions of RIPLA . . . ." In the instant case, Crook never ran afoul of the advance consent provision and was not convicted of failing to comply with it. He never received a license because he never posted the necessary bond. Thus, further factual development would be needed for Crook to raise a ripe, as-applied challenge. However, the issue does present a viable facial challenge.

¶41.    The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Similarly, the Mississippi Constitution states:

> The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.

Miss. Const. art. 3, § 23. The key determination for the Court is whether, given the totality of the circumstances, the advance consent provision is unreasonable, and the unreasonableness of the provision would manifest in every possible circumstance. *Salerno*, 481 U.S. at 745.

¶42. Point-of-sale inspection licenses have been at issue in many cases around the country, and the majority understandably looks to them for guidance. *See **Hometown Co-Operative Apartments v. City of Hometown***, 515 F. Supp. 502, 503 (N.D. Ill. 1981) ("[T]his Court held that the predecessor of Hometown's present ordinance was 'unconstitutional under the fourth amendment insofar as it fail(ed) to provide for a warrant as a prerequisite for the point of sale inspection.'"); ***Mann v. Calumet City, Ill.***, 588 F.3d 949, 951 (7th Cir. 2009) ("'Point of sale' ordinances such as this one are common and have withstood constitutional attack in all cases that we know of in which the ordinance avoided invalidation under the Fourth Amendment by requiring that the city's inspectors obtain a warrant to inspect a house over the owner's objection."). However, point-of-sale inspection ordinances are factually distinct from RIPLA because inspections performed as part of a point-of-sale inspection ordinance are triggered by a certain, specific event, such as the sale or lease of a property. Under RIPLA, a rental owner gives advance consent to inspections which may occur "when and as

needed to ensure compliance."[4]   RIPLA's inspection provisions give the city much more freedom to engage in searches than does a point-of-sale inspection ordinance.

¶43.    Crook relies on ***Dearmore v. City of Garland***, 400 F. Supp. 2d 894 (N.D. Tex. 2005), to show the unconstitutionality of advance consent provisions.  In ***Dearmore***, owners of rental property were forced to apply for rental property permits, and as a condition of the permit, the city would inspect the property at least once a year.  ***Id.*** at 897.  If the owner failed to allow the inspection, he or she automatically was charged with an offense.  ***Id.***  The ***Dearmore*** Court, in determining that the petitioner had a valid cause of action, opined that landowners are "between a rock and a hard place" because the owner must choose between:

> (1) the denial of a permit for refusing to consent to the inspection and thus loss of the ability to make commercial use of one's property for economic gain; (2) the withdrawal of consent, which will result in the imposition of substantial monetary fines for refusing to allow the inspection; or (3) consent in advance to the warrantless search or inspection, regardless of the necessity of such an inspection or search.

---

[4]RIPLA states in section 6.a. that owners of rental property have an obligation to comply with:

i.      The provisions of RIPLA.

ii.     All housing codes of the City, however titled or designated.

iii.    Technical codes of the City in effect at the time building permits were issued for such Dwelling, including the building, electrical, plumbing, and mechanical codes.

iv.     The zoning ordinance and the subdivision and environmental ordinances, codes and regulations of the City, including but not limited to the landscape ordinance.

v.      State and federal housing laws and administrative regulations.

vi.     Judicial and administrative decrees enforcing any of the provisions of RIPLA; the housing code, technical code, zoning code, and subdivision and environmental regulations of the city; and/or state and federal housing laws and administrative regulations.

*Id.* at 904. Unlike the ***Dearmore*** ordinance, RIPLA allows the owner later to refuse entry, and refusal of entry is not an automatic offense. However, I am of the opinion that, under RIPLA's provision that predicates the very issuance of a permit on the giving of advance consent, although refusal may occur at the time of the search, there is no denying that the owner was forced to choose between giving advance consent, forgoing the business of being a landlord, or renting without a rental license and subjecting himself to criminal penalties.

¶44.   RIPLA also is distinguishable from the ordinance in ***Tobin***, discussed above. In ***Tobin***, the ordinance at issue stated that an inspection of a rental property would occur "at least once every three years," and that, before the inspection, the city must give notice of the inspection and must advise "these persons of their right to refuse inspection." ***Tobin***, 939 F. Supp. at 632. Unlike RIPLA, the ***Tobin*** ordinance does not contain an advance consent provision and the city *must* inform the occupant of her right to refuse entry.

¶45.   In another analogous case, ***Baughman v. Board of Zoning Appeals for Harrison Township***, 2002 WL 1773043 (Ohio 2002), the ***Baughman*** Court was faced with deciding whether a conditional use permit, that required the owner to give advance consent for the Zoning Inspection to search the premises "as frequently as necessary to ensure conformity with the conditions set herein," was constitutional. *Id.* at *4 (¶ 18). The court reasoned that unlimited access could easily be used to "harass and obstruct the lawful operation of business," and concluded that requiring a permit applicant to "consent in advance to an unlimited number of warrantless searches as a condition to engage in an otherwise lawful enterprise" was unreasonable and therefore unconstitutional. *Id.* at *4 (¶20). While under

RIPLA's schema, if the owner or tenant refuses entry, a judicial warrant must be sought; there is no denying that the owner was forced, prior to the point at which he or she refuses entry, to give advance consent to a limitless number of warrantless searches.

¶46. The Supreme Court has held administrative searches to be reasonable when supported by a warrant. *Camara*, 387 U.S. at 538. The Supreme Court aptly pointed out that whether a warrant is necessary "depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." *Id.* at 533. While the City of Madison, no doubt, has a great policy interest in maintaining rental properties, the interest of the city is not in any way frustrated in the absence of advance consent, as it would not impose an undue burden to require it to take the time needed to obtain a warrant, if necessary.

¶47. No matter the individual circumstances of each search, the advance consent provision forces *every* rental owner to choose between giving advance consent, forgoing renting the property, or renting without a license, thereby subjecting oneself to criminal penalties. When one does not have any other reasonable alternatives, I am of the opinion that the choice of whether to give consent exists only as a mirage. Ergo, pursuant to a facial challenge, I would hold the advance consent provision to be unconstitutional. Further, under RIPLA's severability clause, my holding would deem the advance consent provision a nullity; thus, the city may continue issuing licenses and enforcing all other requirements in place for landlords to obtain one. However, no licensed landlords should be considered to have given advanced consent to a search.

### 3) Crook's Conviction, Arrest, and the $10,000 Bond, Line of Credit, or Collateral

27

¶48. The majority would overturn Crook's conviction. I disagree, and I would uphold the result reached by the Court of Appeals pertaining to Crook's conviction, arrest, and the bond requirement.

¶49. Under RIPLA, a party is not deemed to give advance consent to an inspection until the party is issued a rental license.[5] In other words, the issuance of a rental license *triggers* the advance consent provision. Crook was convicted of renting property without a rental license under RIPLA. Although Crook submitted a rental license application, he failed to post the bond and therefore was never issued a rental license. Thus, Crook never gave advance consent to an inspection, and his conviction should be upheld.

¶50. For foregoing reasons, I respectfully concur in part and dissent in part and in result.

**RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**

---

[5]RIPLA states: "The Owner, *as a condition to the issuance* of the Rental License, shall consent and agree to permit and allow the Building Official to make the following inspections of the Premises, Dwelling, Dwelling Units, and Rental Units when and as needed to ensure compliance with the provisions of RIPLA . . . ."